WILLIAM S. VERPLANCK, AS RECEIVER, ETC., OF THOMAS W. CHRYSTIE, APPELLANT, *v.* LORENZO VAN BUREN AND SQUIRE VAN BUREN, RESPONDENTS.

*Former judgment — founded upon false evidence — operates as an estoppel to second action for same cause.*

One Monell, as assignee of one Chrystie, commenced an action against the present defendants to procure a settlement of the amount due to Chrystie, who had been engaged in carrying on the business of manufacturing brick with them, and recovered a judgment for a certain sum on the 4th of May, 1874. Subsequently the present plaintiff, having been appointed assignee in the place of Monell, brought this action, in which he alleged, that during the period covered by the accounting in the former action the defendants had fraudulently made entries in their books of account of fictitious sales of bricks, at prices much lower than those they had actually received for them, and sought to recover the interest of Chrystie in the excess so received. *Held*, that he was estopped by the former judgment, and that the action could not be maintained.
The fraud which vitiates a judgment consists of acts or omissions whereby the court is deceived, and in consequence a judgment is given different from what would otherwise have been given; the fact that the evidence upon which a judgment was founded was false, does not justify the bringing of another action for the same cause of action set up in the first.
*State of Michigan* v. *Phœnix Bank* (33 N. Y., 25) distinguished.

APPEAL from an order granting a motion, made upon the minutes of the justice before whom the action was tried, setting aside a verdict of a jury in favor of the plaintiff.

The defendants and Thomas W. Chrystie, on the 1st day of April, 1870, entered into an agreement by which the defendants agreed to

carry on, and did carry on, the business of manufacturing brick, on shares, on the premises of Thomas W. Chrystie, for the term of five years from April 1, 1870. By this agreement the defendants were to sell the brick and receive the receipts therefor, and to pay over one-half of the net proceeds thereof to said Thomas W. Chrystie. On the 3d day of November, 1871, John J. Monell was appointed receiver of the goods, chattels and credits of the said Thomas W. Chrystie, and afterwards an action was brought by said receiver against said defendants, for an accounting of the proceeds of said business for the years 1870, 1871 and 1872, and a judgment recovered therein on May 4, 1874, for $3,278.49. Subsequently, William S. Verplanck having been appointed receiver in the place and stead of said John J. Monell, brought this action against the defendants for not accounting for all the sales of brick made on said Chrystie's premises under said contract on the trial in the former action, and for fraudulently concealing the actual sales on said accounting before said referee, alleging that during the period covered by the prior accounting, they made " bogus sales " of about 7,000,000 of brick at a "nominal price " below the market-price to Marcus Kendall and William R. Knapp, and entered that false price in their books, and reported it to Chrystie, and deceived him thereby until after judgment in the former action; at the same time sending the same brick to the regular market in the usual way as provided by the contract, and receiving therefor $9,680.38 more than they reported. The cause came on for trial before Mr. Justice DYK-MAN and a jury, at the court-house, in the city of Poughkeepsie, on the 6th day of December, 1876, and a verdict was rendered for $6,476.42 in favor of the plaintiff. The defendants' counsel then moved upon the minutes and upon the whole case for a new trial and to set aside the verdict of the jury. On the 3d day of January, 1877, the verdict was set aside and a new trial granted, and an order to that effect entered, and from that order plaintiff appeals to this court.

*Calvin Frost,* for the appellant. The action is on the case " for fraud and deceit " to recover money received by defendants " in a fiduciary capacity " as agents of the plaintiff, and fraudulently embezzled and converted. (Code, § 179, subs. 2 and 4, last clause.) The action for fraud will lie whenever any fraudu-

lent. intent works an injury, although there might be also an action for accounting. (1 Bac. Abr., Action on the Case, F.; *Benton* v. *Pratt*, 2 Wend., 385; *Goldberg* v. *Dougherty*, 7 Jones & S., 189; *Morgan* v. *Skidmore*, 55 Barb., 263–268; *Wanzer* v. *DeBaum*, 1 E. D. Smith, 261; *Stowell* v. *Chamberlain*, 60 N. Y., 272; *Dean* v. *Allen*, 8 Johns., 390; *Colwell* v. *Bleakley*, 1 Abb. Ct. of App. Dec., 400; *Smith* v. *Weeks*, 26 Barb., 466.) A former adjudication pleaded as a defense may always be avoided by showing that it was fraudulently obtained, and it may be impeached collaterally for fraud wherever it is set up. (Code, § 168; *Dobson* v. *Pearce*, 12 N. Y., 165; *Hackley* v. *Draper*, 60 id., 92; *Michigan* v. *Phœnix Bk.*, 33 id., 25; *Whetstone* v. *Whetstone*, 31 Iowa, 282; *Dunlap* v. *Cody*, 31 id., 262; *Borden* v. *Fitch*, 15 Johns., 421; *Jackson* v. *Jackson*, 1 id., 425; *Webster* v. *Reid*, 11 How. [U. S.], 437; *Martin* v. *Judd*, 60 Ill., 85; *Wilson* v. *Green*, 25 Vt., 450–456; *Story* v. *Norwich R. R.*, 24 Conn., 94; *Grove* v. *Hodges*, 55 Penn., 519.) If failure to litigate in the first suit be caused by the fraud of his adversary, a second action will lie. (*Barford* v. *Kersey*, 48 Miss., 643–649; *Stewart* v. *Stebbins*, 30 id., 66; *Ferrolt* v. *Bradfort*, 2 Fla., 508; *Spicer* v. *Waters*, 65 Barb., 233; *Reigal* v. *Wood*, 1 Johns. Ch., 405; *Smith* v. *Weeks*, 26 Barb., 466; *Huggins* v. *King*, 3 id., 619; *Devoue* v. *Fanning*, 4 Johns. Ch., 199; *The People* v. *Eddy*, 57 Barb., 593; *West* v. *Kerby*, 4 J. J. Marsh., 56; *Brunk* v. *Means*, 11 B. Monroe, 214; *Bulkly* v. *Andrews*, 39 Conn., 524.) Judgment may be attacked collaterally for fraud. (*Rasuley* v. *Stott*, 26 Penn. St., 126, 130; *Horner* v. *Doe*, 1 Ind., 130; *Callahan* v. *Griswold*, 9 Mo., 775; *Hartman* v. *Ogborn*, 54 Penn. St., 120; *Hall* v. *Hamlin*, 2 Watts [Penn.], 354; *Edgell* v. *Sigerson*, 20 Mo., 494; 23 Ind., 493; 25 id., 456; *Vandevier* v. *Mason*, 24 N. J., 818; *Woodward* v. *Schmidt*, 5 Phil., 152; *Fisk* v. *Miller*, 20 Texas, 579; *Annett* v. *Terry*, 35 N. Y., 256; *Pearce* v. *Olney*, 20 Conn., 544; *State* v. *Little*, 1 N. H., 257; *Manston* v. *Molesmith*, 1 Eden, 18; *Kennedy* v. *Daily*, 1 Sch. & Sef., 135; *Phillippson* v. *Lord Egremont*, 6 Q. B., 587–605; *Lord Brandon* v. *Beecher*, 3 Clark & Fin., 510; *Sheddon* v. *Patrick*, 1 Macq., 535; *Reg* v. *Saddlers Co.*, 10 H. L., 431; *Tommey* v. *White*, 4 id., 313.) This rule is qualified if there be negligence in the former action, but it is not negligence to rely on the truth of statements of an adver-

sary. (*Mead* v. *Bunn*, 32 N. Y., 275; *Morse* v. *Switz*, 19 How. Pr., 286–288; *Clark* v. *Rankin*, 46 Barb., 578; *Smith* v. *Nelson*, 62 N. Y., 289; *Hungerford's Appeal*, 41 Conn., 322.)

*H. H. Hustis*, for the respondents

GILBERT, J.:

We are of opinion that the former adjudication is a bar to this action. There is no occasion to dispute the principle that fraud vitiates all acts, however solemn, or even judicial. That principle is an exception to the general rule rejecting extrinsic evidence to affect written instruments or public records. As was said in the *Duchess of Kingston's Case* (20 How. St. Tr.), "fraud is an extrinsic collateral fact, which vitiates the most solemn proceedings of courts of justice." In such cases, the whole proceeding is *fabula non judicium*. (*Harrison* v. *Mayor*, 4 De Gex, M. & G., 148.) The principle applies to every species of judgment. It matters not whether the judgment impugned has been pronounced by an inferior or by the highest court of judicature in the State. Equally well settled, however, is another principle of universal application, namely, that the judgment of a court of competent jurisdiction, directly upon the point, is, as a plea, a bar, or, as evidence, conclusive between the same parties and their privies. Such a judgment is an estoppel. (1 Gr. Ev., §§ 522–535.) Both these rules are founded on the highest public policy. On the one hand, the public interest requires that fraud shall be detected and suppressed, and on the other, that a limit shall be prescribed to litigation, and that the same cause of action shall not be brought before the court more than once for a final determination. At first blush these principles would seem to be inconsistent with each other, but, in truth, there is no repugnancy between them. As was also remarked in the *Duchess of Kingston's Case*, "although it is not permitted to show that the court was *mistaken*, it may be shown that they were *misled*."

The fraud, therefore, that vitiates a judgment consists of acts or omissions whereby the court is deceived, and, in consequence of such deception, a judgment is given different from that which otherwise would have been rendered. But the insisting upon rights which, upon a due investigation of those rights, might be found to

be overstated or overestimated, is not the kind of fraud which will authorize the court to set aside a judgment (*Patch* v. *Ward*, Law R., 3 Ch. App., 207); nor will a party against whom a judgment is rendered be permitted to impeach it by proof that the evidence upon which it is founded was false. (*Ross* v. *Wood*, 8 Hun, 185; S. C., Ct. of App., MSS.) A great wrong, no doubt, is done, and a high crime committed, by such a use of false witnesses; but the remedy for the public crime is the indictment and punishment of the parties to it, and for the private wrong, by a motion in the action for a new trial, or an appeal. There might never be an end to a suit if parties were permitted to set up the giving of false testimony against them, as a fraud which vitiated the judgment. The only fraud alleged here is of that character. The defendants, it is true, were the witnesses who, it is alleged, gave the false testimony on the trial of the former action; but that makes no difference. They were competent witnesses, and were no more guilty of fraud by testifying themselves, than if they had procured others to do so.

The case of *State of Michigan* v. *Phenix Bank* (33 N. Y., 25) we think is not in point. In that case, a gross fraud was practiced directly upon the members of the board of auditors, by which alone they were induced to make the award. They were *misled* by the counsel for the bank.

Should the rule for which the plaintiff contends be adopted, and a judgment had against the defendants, what is to prevent their bringing another action to recover back moneys paid upon that judgment, on the ground that the testimony of the plaintiff's witnesses on the trial of this action was false? How many adjudications must there be to constitute a bar?

Upon principle as well as upon authority, we are convinced that the former judgment is a bar to this action. (*Smith* v. *Nelson*, 62 N. Y., 286.)

The order appealed from must, therefore, be affirmed, with costs.

BARNARD, P. J., concurred; DYKMAN, J., not sitting.

Order granting new trial affirmed, with costs.